# Baker *et al. v.* Selma Street & Suburban Railway Company.

### *Bill in Equity for Injunction.*

1. *Street railroads; right of owner of lots on street to enjoin construction; nuisance.*—An electric street railroad is not *per se* a public or private nuisance, and is not a new servitude imposed upon the land, for which the owners of property abutting on a street are entitled to compensation, or of which they have a right to enjoin the construction.

2. *Same; same; same.*—To entitle the owners of property abutting on a street to enjoin the construction of a street railroad along such street, it is incumbent on them to aver and prove that such railroad would be a nuisance in fact and that they

[Baker *et al.* v. Selma Street & Suburban Railway Company.]

would suffer special injury different in kind from that sustained by the general public.

3. *Same; when bill without equity; conclusions.*—A bill filed by property owners in a city sought to enjoin the construction of an electric street railway line (which the municipality had consented to and authorized) along the street on which their residence property abutted, alleging that they had owned and occupied their said property for more than twenty years; that the erection of the poles near the sidewalk line, with wires strung thereon, would materially obstruct said street as a highway for vehicles and thereby constitute a public nuisance; that the noise, dust and vibration caused by the running of the cars over and upon said street and the danger of injury and damage to property of complainants in going to and from their said property will render said property undesirable and greatly diminish its value. *Held*: That the bill stated conclusions, rather than facts, and was without equity.

4. *Street railroads; construction; actions.*—One who suffers damage, by the improper construction of an electric street railroad along a street in front of his property, or by the negligent or unskillful operation of such road, has an adequate remedy by action at law.

APPEAL from the City Court of Selma.

Heard before the Hon. J. W. MABRY.

The bill in this case was filed by the appellants, Joseph M. Baker and another, against the Selma Street & Suburban Railway Company, and sought to enjoin the construction of defendant's track along Union street in the city of Selma.

The facts averred in the amended bill are, in substance, as follows: Union street and Lapsley street run northerly and southerly, Lapsley being next west of and parallel to Union street. Both intersect Selma and Dallas streets, the two last running in an easterly and westerly direction, Dallas being next north of, and parallel to, Selma street. Between Dallas and Selma streets, and on the west side of Union street, in Selma, live complainants, the owners of the entire fee to the middle of the street, on said west side, in said limits. Union street is very narrow at this place, being sixty feet in width, of which twenty-five feet is devoted to curbing,

sidewalks and two lines of shade trees. The ingress and egress to the stables of complainants are entirely on this part of Union street. The building and construction of the street railway on that street (it is averred) will materially obstruct said street as a public highway for vehicles, for which purpose it has been, and is now, used, and will constitute a public nuisance in the street. The street particularized is dedicated to the use of the public forever. The defendant is about to erect poles on that street for the purpose of stringing wires across said street, the poles to be placed on each side of the street in two parallel rows, opposite each other, those in a row being about one hundred and ten (110) feet apart. On these poles wires will be strung reaching across the street, and over the center of the street, on these wires, an electric wire will be stretched. A track, in which the rails will be four feet eight and one-half inches apart, will be put down in the middle of the street, and electric cars will be run on this track. The defendant organized under the general laws of the State of Alabama, in the year 1891, as fully appears by a reference to exhibit D to the amended bill, and subsequently purchased the property of the Selma Street Railway Company. It succeeded to the rights of the latter company, which had no franchise to operate a street railway on that part of Union street between Selma and Dallas streets. Nor is that part of Union street here involved including among the streets mentioned in defendant's charter as the streets upon which its road was to be built.

That part of Union street described has never been used by defendant, or by its predecessor for its street railway; but the track of its predecessor has heretofore been located as particularly described in the amended bill, leaving out that part of Union street above described.

The attempted action of defendant to lay its track, erect its poles, string its wires, and operate its cars along said part of Union street is in excess of the powers given it by its charter and is *ultra vires*. If the road bed is

[Baker *et al.* v. Selma Street & Suburban Railway Company.]

constructed upon Union street, cars are run over it, and poles and wires erected, it will greatly damage the property of the abutting owners, and wil permanently and irreparably interfere with their easement on said street, and, if done, would be absolutely without right or authority from any source. The damage to complainants will be about the sum of five thousand ($5,000) dollars.

It is averred that the defendant has obtained from the municipal authorities of Selma a "pretended" consent to operate its line along Union street, but that this confers no charter power; nor does it limit the defendant to any mode of construction, or specify any route, or part of the street. A copy of this consent is made an exhibit to the bill as amended.

The defendant interposed demurrers to the bill as amended upon the following grounds, in substance: (1) That it does not appear from the bill that complainants or either of them will be damaged by the construction or operation of said railway in any manner of which they have a right to complain; (2) that it appears therefrom that defendant had and has a right to construct and operate said railway along said street; (3) that it appears from the bill that complainants have no right to require defendant to condemn a right of way over said street or to pay complainants any compensation therefor; (4) that it appears from said bill that said street railway will not be a public nuisance of which complainants have a right to complain; (5) that it appears from said bill that complainants will not suffer such special damage, by reason of the construction and operation of said street railway, as will entitle them to maintain this suit.

These demurrers were sustained, and complainants appeal, assigning said decree as error.

PETTUS, JEFFRIES & PARTRIDGE, for appellants.—The statement that the operation of a street railway is not the imposition of an additional servitude is not *germane* to this discussion. For the objection of appellant is not that it will be an additional servitude, but that appellee, absolutely without right or power of any kind, in defiance of the restrictions of its charter, and of the fact that the part of Union street between Selma and Dallas has

never been used by its predecessor or predecesors, is about to commit a nuisance on the public highway, by digging up that highway, by making a ditch in it and is about to erect poles in that highway and string wires across it, and that apellants are users of that highway, besides being abutting owners of the fee to the middle of the street.

Appellee's franchise is subject to the constitutional provisions of 1875, requiring consent of municipal authorities to the operation of a street railway in a street. (Article XIV, § 24, of Constitution.) This consent is a condition precedent to a rightful use of the streets. And the provision is prohibitory, not permissive, conferring neither franchise nor right.—*Birmingham & Pratt Mines St. Ry. Co. v. Birmingham St. Ry. Co.*, 79 Ala. 465, 470; *The Metro. City Ry. Co. v. City of Chicago*, 96 Ill. Rep. 620. The appellee, having organized under sections 1199-1200 of the Code of 1896, must derive its powers and rights from the article of the Code to which belong these sections.

Section 1194 is the provision which empowers the municipal corporation to give the consent required by article XIV, § 24, of the constitution. The reasons for this conclusion are as follows: The constitutional provision refered to above is not a grant of power, either to a municipal corporation or to a street railway company. It neither empowers the former to give consent, nor the latter to construct and operate a road. It is prohibitive in its nature. Therefore, there must be an express grant of power to towns or cities, by either a general or special act of the legislature, before they can exercise the supervision required by the constitution.—*Birmingham & Pratt Mines St. Ry. Co. v. Birmingham St. Ry. Co., supra; People's Railroad v. Memphis Railroad*, 10 Wall. 38. 50, 51; Joyce on Elec. Law, §§ 152, 195; *Domestic Tel. Co. v. Mayor of Newark*, 49 N. J. L. 344; *L. & N. R. R. Co. v. Mobile, J. & K. C. R. R. Co.*, 124 Ala. 162.

Can the mayor and council supply the omission of that part of Union street from the charter? It needs no argument to refute this proposition. Consent is what

the word implies, and is not a grant. We will cite some of the authorities on this subject and pass without further comment.—*Mayor, etc., of Knoxville v. Africa*, 77 Fed. 501; *Staten Island Ry. Co. v. Staten Island E. Co.,* 54 N. Y. 598; *People v. Third Ave. R. Co.*, 45 Barb. (N. Y.) 63.

Under the general law, article VII, of chapter 28, of the Code of 1896, the law under which appellee was organized, and under the constitution of 1875, section 24, of article XIV, the consent of the city authorities must be obtained before a street railway can be operated in the streets of an incorporated city or town. In subdivision 7, of section 1193, of the Code of 1896, the railway is limited to the line on the street, and between the termini named in its declaration, and in the writen consent of the proper authorities of the city, town or county. · As appellee was organized under sections 1199 *et seq.* of the Code of 1896, it took what rights its predecessor, the Selma Street Railway Company, had; which rights, in so far as the line of operation of its track is concerned, are set out in its declaration above referred to. And the court will look to this instrument, and to the written consent to be given by the municipal authorities. And the proper rule for the construction of an ordinance relating to public improvements is that all doubts are to be resolved in favor of the citizens.—*Slaughter v. O'Berry*, 48 L. R. A. 442.

The city authorities are made trustees for the public, and are bound to exercise the discretion themselves. The corporation desiring to locate in a street is required as a condition precedent, to have its route located, the manner of construction and mode of operation of its railway prescribed by the mayor and council of Selma. See *State of New Jersey v. Mayor, etc., of Jersey City*, 26 L. R. A. 281, and note the identity of meaning between the New Jersey law there construed and our own law. See also 1 Dillon on Mun. Corp., 157; *City Street R. Co. v. Jones*, 34 Fed. Rep. 579; *Mayor, etc., of Knoxville, supra; State v. Mayor of Jersey City*, 26 L. R. A. 281; *State v. Mayor of Newark*, 30 Atl. Rep. 528; *West Jersey Traction Co. v. Camden*

*Horse R. Co.,* 35 Atl. Rep. 49.

The power of the city of Selma to grant the consent is a limited power. The statute (§ 1194), granting the power has defined the manner in which it shall be exercised, and it cannot be exercised in any other manner. This is a familiar doctrine of the common law. "When a statute limits a thing to be done in a particular manner, it includes in itself a negative; and the negative is that it shall not be done otherwise. The limitation exists whenever the statute prescribes the particular manner in which the thing must be done."—*Bickley v. Keenan,* 60 Ala. 293, 295; *Arrington v. Sav. & Western R. Co.,* 95 Ala. 434, 438; *Commrs. Court v. Bowie,* 34 Ala. 461; *Ex parte Selma & G. R. Co.,* 46 Ala. 530; *Wetumpka v. Wetumpka W. Co.,* 63 Ala. 611.

The following cases clearly show appellants' right to file this bill: *West v. Brown et al.,* 114 Ala. 118; *State v. Mayor, etc., supra; Webb v. City of Demopolis,* 87 Ala. 659; *L. & N. R. R. Co. v. M. J. & K. C. R. Co.,* 124 Ala. 162; *M. & M. R. Co. v. Ala. M. R. Co.,* 116 Ala. 58; *E. & W. Ala. R. Co. v. E. T. V. & G. Ry. Co.,* 75 Ala. 275; *H. A. & B. R. Co. v. Mathews,* 99 Ala. 24; *Perry v. N. O. Ry. Co.,* 55 Ala. 413; *Ala. & Fla. R. Co. v. Burkett,* 42 Ala. 83; Joyce on Elec. Law, §§ 255, 345; *Broome v. N. Y. & N. J. Tel. Co.,* 42 N. J. Eq., 141; Pomeroy's Eq. Juris., §§ 1350, 1351.

MALLORY & MALLORY and A. D. PITTS, *contra.*—The court below did not err in sustaining defendant's demurrers to the amended bill of complaint.—*Birmingham Traction Co. v. Birmingham Railway & Electric Co.,* 119 Ala. 137; *Baker et al. v. Selma St. & Sub. Ry. Co.,* 130 Ala. 474; 30 So. Rep. 464; Joyce on Elec. Law, §§ 278, 335, 336, etc.; Booth on St. Rys. (1892), § 82; 1 High on Inj. (3d ed.), §§ 726 and 829; *E. & M. R. R. Co. v. E. T. V. & G. R. R. Co.,* 75 Ala. 280; *H. A. & B. R. R. Co. v. B. U. Ry. Co.,* 93 Ala. 508; Code of 1896, §§ 1199 *et seq.*

The amended bill was a radical and unauthorized departure from the case made by the original bill of com-

plaint and first amendment.—1 Ency. of Pl. & Prac., pp. 472 to 475, and the authorities, especially from Alabama, cited therein.

The amended bill shows that respondent has the right to construct and operate said proposed track on Union street, between Selma and Dallas streets. See *Baker et al. v. Selma St. & Sub. Ry. Co.*, 130 Ala. 474; 30 So. Rep. 464.

The amended bill of complaint admits that defendant is a street railway company, and that the road it is constructing is for use as a street railroad only. Such a road is not an additional servitude, even as to the abutting owners in fee.—*Birmingham Traction Co. v. Birmingham Ry. & Elec. Co.*, 119 Ala. 137; *Baker v. Selma St. & Sub. Ry. Co.*, 130 Ala. 474; 30 So. Rep. 464; Joyce on Elec. Law, § 335.

Complainants do not show any special or extraordinary or irreparable damage to themselves to be caused by the construction or operation of the said road.—Joyce on Elec. Law, §§ 336, 337 *et seq.*

A street railway is not *per se* a public nuisance. Booth on St. Rys. (1892), § 82; note to Joyce on Elec. Law, § 334; High on Inj. (3d ed.), § 829.

A private party, even though an abutting owner, cannot maintain an action to restrain an electric railway company from constructing its line on the ground alone of a public nuisance. He must show some special or particular injury to his individual rights.—Joyce on Elec. Law, § 1004 and citations.

Complaianants cannot maintain their bill because there is in it no question of appropriating their property illegality under the right of eminent domain.—*Birmingham Traction Co. v. Birmingham Ry. & Elec. Co.*, 119 Ala. 140; *E. & W. R. R. Co. v. E. T. V. & G. R. R. Co.*, 75 Ala. 280; 1 High on Inj., §§ 762 and 827.

HARALSON, J.—It is not averred in the bill, or denied, that the defendant company was regularly and legally incorporated.

The demurrer to the bill as amended questions the complainants' right to maintain it, on the ground that

it does not appear that complainants or either of them will be damaged by the construction and operation on Union street between Selma and Dallas streets, of defendant's street railway, in any manner in which they have a right to complain.

The bill avers that part of Union street between Dallas and Selma streets is occupied solely for residences and dwellings; that that part of Union street is extremely narrow, to-wit, sixty feet; that the dwelling and residence of complainant, Joseph M. Baker, is near to the west side of said Union street, between said points, being about six feet from said street; that said house as it now stands, has stood for many years, to-wit, twenty years; that the stable of complainant, Mary Baker Parrish, is near said street, and her residence is, to-wit, about fifty feet from said street, and as it now stands, has stood for many years, to-wit, for twenty years; that the sidewalks on each side of said street take up about 12 feet; that said company is proceeding to erect poles near the edge of the sidewalks, from which wires, to operate the road, are to be strung, which "will materially obstruct said street as a highway for wagons, carriages, drays and other vehicles for which purpose it has been and is now used by the public, and thereby constitute a public nuisance in said street;" that the noise, dust and vibration caused by the running of the cars over and upon said street and the danger of injury and damage to property of complainants, in ingress and egress to and from their stables, out-houses and dwellings by the same, will render said property undesirable for residence or dwelling property, and will greatly diminish the value of the same in, to-wit, the sum of $5,000." These seem to be conclusions of the pleader. Such objections have all been made the subject of judicial investigation and decision. Mr. Booth, in his work on Street Railways, section 82, states the doctrine that "A street surface passenger railway constructed at street grade in the usual manner and operated by animal power is not *per se* a public or a private nuisance, nor is it a new servitude imposed upon the

land for which the owners of the fee are entitled to compensation." The same principle applies to such roads when operated by electricity. As to this, the author says: "After full consideration of the various objections raised to the use of electricity, every court of last resort to which the question has been submitted has held that the electric street railway does not constitute a new servitude, and that the use of this motive power when duly authorized does not entitle abutting owners to compensation."—§ 83; Joyce on Elec. Law, § 341. "Streets and highways," says Mr. Joyce, section 278, "are dedicated to the use of the traveling public, and street railways, which are for the purpose of facilitating travel, impose no additional burden upon the abutting owner, and are a public use." The same author, section 335, in speaking of the difference between horse and electric railways, says: "The following facts have been presented to the courts in various cases, for holding that electric street railways are an additional burden,—that poles and wires are erected in the streets, constituting an exclusive possession of the same, so far as the space occupied is concerned; that the wires are dangerous to the life and safety of the traveling public; that loud and unpleasant noises result, such as the buzzing sound produced while the car is in motion, and by the sounding of the gong, and that on account of the speed of the car there is much more danger, than in horse street railways. * * * They are all doubtless true to some extent." He proceeds then to show, by the adjudications on the subject, that they are, so far as the right of the owner of the fee to complain is concerned, without merit, on the ground that such uses are no more than the drawing of any other vehicle on the streets. They all create noise, dust and vibrations, and are attended with some danger to life and property; but such uses are legitimate and within the original dedication of streets for the benefit of the public.—Joyce on Elec. Law, §§ 36-341; *Birmingham T. Co. v. B. R. & E. Co.*, 119 Ala. 141, 142; *Baker v. Selma St. & Sub. Railway*, 130 Ala. 474.

In the case of the *Birmingham T. Co. v. B. R. & E. Co.,* *supra,* this court said: "It has been adjudicated with practical unanimity throughout the country for many years that street railways operated by horse power, though the cars were confined to fixed tracks built upon the surface of the street for their special use, were, so far as the right of the owner of the fee to complain was concerned, no more than the drawing of any other carriage or vehicle upon the streets, and were, therefore, legitimate uses of the streets, which the municipality was authorized to permit without violating any right of the owner of the fee. * * * The electric railways, such as we are now considering, are a comparatively recent development, yet, as is of common knowledge, they have practically superseded all systems of street railway enterprise (saving the cable systems in the larger cities), and their nature and modes of construction and operation, as affecting or not the legitimate use of streets within the implied contemplation of the dedication, have been subjects of frequent adjudications by court of last resort in this country; and it may be said that there is almost unanimity in the adjudications that such uses are legitimate uses of streets, by the permission of municipalities, without any right of the owner of the fee to compensation." Many authorities are collated to support the text.—*Baker v. S. S. & S. R. Co.,* 130 Ala. 474.

The bill shows that the company had the consent and authority of the municipality of the city to construct its line and operate its cars on Union street; and if it be conceded that the charter of the company did not designate that portion of said street between Selma and Dallas streets, upon which they propose to lay their track, erect poles and operate their line of road, the complainants suffered no injury of which they can complain.

If such alleged obstructions as complainants set up to enjoin the construction and operation of this road are held to be sufficient to that end, it would be difficult for any such line to be built and operated in any city or town.

To entitle the complainants to an injunction against

[Green *et al.* v. Emens *et al.*]

the construction and operation of this road, it was incumbent on them to show by averments that it would be a nuisance in fact, and that they would suffer special injury different in kind from that sustained by the general public.—1 High on Inj., §§ 762, 827, 828; *First Nat. Bank v. Tyson*, 133 Ala. 459; 32 So. Rep. 148.

If complainants suffer damage caused by improper construction or negligent or unskillful operation of the road, they have their remedy, and defendant would be liable in damages.—Booth on Street Railways, § 97. The bill is obviously without equity, and we have been unable to discover wherein the court erred in sustaining the demurrer to it.

Affirmed.